UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 91-1621
UNITED STATES,
Appellee,

v.

DAVID ELWELL,
Defendant, Appellant.

No. 91-1674
UNITED STATES,
Appellee,

v.

HOBART WILLIS,
Defendant, Appellant.

No. 91-1742
UNITED STATES,
Appellee,

v.

RICHARD MORETTO,
Defendant, Appellant.

ERRATA SHEET

The opinion of this Court issued on January 20, 1993, is

amended to delete, on page 21, line 10, the sentence which reads:

"Further, Elwell himself had been
recorded as advising Polito in the fall
of 1988 that Polito still owed twenty-
four something, a figure that in the
context of this case suggests prior
deliveries of $24,000 worth of cocaine."

January 20, 1993

UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 91-1621

UNITED STATES,

Appellee,

v.

DAVID ELWELL,

Defendant, Appellant.

No. 91-1674

UNITED STATES,

Appellee,

v.

HOBART WILLIS,

Defendant, Appellant.

No. 91-1742

UNITED STATES,

Appellee,

v.

RICHARD MORETTO,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. A. David Mazzone, U.S. District Judge]

Before

Selya, Circuit Judge,

Campbell, Senior Circuit Judge,

and Boudin, Circuit Judge.

Stephen J. Weymouth with whom Balliro, Mondano & Balliro, P.C.

was on brief for appellant David Elwell.

Dana Alan Curhan with whom Barry M. Haight and Buckley, Haight,

Muldoon, Jubinville & Gilligan were on brief for appellant Hobart

Willis.

James J. Cipoletta with whom Cipoletta & Ogus was on brief for

appellant Richard Moretto.

George W. Vien, Assistant United States Attorney, with whom A.

John Pappalardo, United States Attorney, and Heidi E. Brieger,

Assistant United States Attorney, were on brief for appellee.

BOUDIN, Circuit Judge. The grand jury indicted a number

of persons for conspiring to distribute cocaine and for

related offenses. Several of those indicted pled guilty but

three were tried jointly and convicted. The appeal of one

of those convicted is decided today in a separate decision.

United States v. Moran, No. 91-1772. In this decision, we

address the appeals of the other two defendants who were

convicted at trial, together with the appeal of another

defendant who pleaded guilty but contests his sentence. In

two of the three cases we affirm; and in one we remand on a

single issue for resentencing.

I.

We begin with a brief outline of the facts and history

of the case, reserving additional detail for our discussion

of individual claims of error. The evidence submitted to the

jury is, of course, to be viewed in the light most favorable

to the verdict, the jury being accorded great latitude in

resolving credibility and drawing reasonable inferences.

United States v. Rivera-Santiago, 872 F.2d 1073, 1078-79 (1st

Cir.), cert. denied, 492 U.S. 910 (1989).

On August 9, 1990, the grand jury indicted the three

appellants now in this court (Richard Moretto, David Elwell,

and Hobart Willis), as well as six other persons, for

conspiracy to distribute cocaine. 21 U.S.C. 846. Other

countsin the indictment chargedvarious of the defendants with

-5-

related crimes. Willis and several others pled guilty,

Willis pleading to conspiracy and five counts of distribution

under 21 U.S.C. 841. After trial the jury convicted

Moretto, Elwell, and George Moran (whose appeal has been

separately decided) of conspiracy. In addition, Moretto was

found guilty of witness intimidation, 18 U.S.C. 1512, and

Elwell of three counts of distribution, 21 U.S.C. 841, and

one of filing a false tax return. 26 U.S.C. 7206.

The critical testimony at trial, except in the case of

Moran, came primarily from Mark Polito, whose account was

bolstered by police testimony and tape recordings. He

testified that during the spring of 1988 he purchased ounce

quantities of cocaine every week or two from Moretto.

Because Moretto was scheduled to report to prison for a prior

offense, Moretto--according to Polito's testimony--arranged a

meeting between Polito and Willis, "the man he [Moretto] got

his stuff from." At the meeting Willis agreed to introduce

Polito to the distributor who managed Willis' "northern

territory." A few days later Willis introduced Polito to

Elwell and for the next few months Elwell supplied Polito

with cocaine at the same price previously charged by Moretto.

Polito eventually fell behind in payments and, under

pressure for payment exerted by Willis and Elwell, Polito

began to cooperate secretly with law enforcement authorities.

Now buying drugs with government money, Polito recorded

-6-

conversations with Elwell and, on one occasion, brought a DEA

undercover agent to a meeting with Elwell. During a later

sale, Elwell told Polito that Willis wanted Polito to

"remember" Moretto at Christmas, Moretto then being in

prison. This reminder was repeated at a later meeting.

Eventually Elwell became suspicious of Polito, ceased to deal

with him and in 1989 Willis began to supply Polito directly.

The last reported transaction occurred on February 16, 1989,

when Polito paid Willis part of the money still owed to

Elwell for prior purchases.

Moretto was released from prison on June 5, 1990. On

June 11 and 12, 1990, three telephone calls occurred between

Moretto and Polito, which Polito secretly recorded. Those

calls, described below, formed the basis of the obstruction

count against Moretto. Nothing pertinent to the charges was

proved at trial to have occurred after June 12. In August

1990, the indictment was returned.

Following Willis' guilty plea and the trial of Elwell,

Moretto and Moran, the defendants were sentenced. Willis

and Moretto were found to be career offenders under the

Sentencing Guidelines and each was sentenced to 210 months in

prison. Elwell was sentenced to 78 months. The present

appeals followed.

-7-

II.

Moretto's main argument on appeal is that the evidence

of his adherence to the conspiracy charged in the indictment

was too weak to permit a reasonable jury to convict. He

further argues that, at most, the evidence showed several

conspiracies rather than the single one charged in the

indictment, and he asserts that this supposed variance

between the conspiracy charged and any conspiracy proved was

prejudicial. We need not treat the prejudice argument

separately because we conclude that the evidence adequately,

if not amply, supported the government's claim of a single

conspiracy involving Willis and others in which Moretto

participated.

Moretto does not dispute that Willis directed a cocaine

ring but, carving his own role into phases, he seeks to

distance himself from the ring. Moretto's repeated sales of

cocaine to Polito in the first part of 1988, which were amply

proved, are claimed by Moretto to fall outside the ambit of

the Willis ring.1 Moretto then argues that he could not

1Moretto places stress upon a statement of the
prosecutor, made to the judge in a pretrial conference, that
the conspiracy charged by the government began in March 1988
when Moretto introduced Polito to Willis. Although the
prosecutor did make such a statement--seemingly a slip of the
tongue--the government's actual theory of the conspiracy was
that it reached back to embrace Moretto's earlier sales, as
the prosecutor made fairly clear at the bottom of the same
transcript page and even clearer two pages later. There,
responding to the judge's question ("The Government's theory
is that there was some association between them [Moretto and

-8-

have participated in the ring from March 1988 to June 1990

since he was in prison. As to the conversations with Polito

on June 11-12, 1990, Moretto says that--even assuming them to

be obstructive--they occurred well after the last proved

transaction of Willis and Polito on February 16, 1989, and

therefore occurred after the conspiracy.

The jury was entitled to link these supposedly separate

events together with certain connecting facts that Moretto

omits. The drug sales he made to Polito during early l988

were, the jury could have concluded, based on supplies

furnished by Willis; Moretto, according to Polito's

testimony, said that Willis was "the man he got his stuff

from." The jury could also have thought that the Willis-

Moretto relationship was a continuing one since, when Moretto

was forced to report to prison, he introduced Willis as a

substitute supplier. Willis then arranged for further sales

to Polito at Moretto's original price. One act, after all,

can take color from others, and drawing such inferences is

the jury's task.

During Moretto's first year in prison there is ample

evidence of continued sales by Elwell and Willis to Polito.

Moretto, although in prison, was not entirely out of the

picture: Elwell twice told Polito that Willis wanted him to

Willis] prior to that introduction [of Polito to Willis]),
the prosecutor stated, "Yes, from Moretto up the ladder . .
. ."

-9-

"remember" or not forget Moretto at Christmas. While various

inferences can be drawn from these reminders, the jury could

have believed that they reinforced Moretto's connection with

the ongoing conspiracy (even assuming, as the government

seems to do in its brief, that Moretto was not a participant

while imprisoned).2 Specifically, the evidence increases

the likelihood, however slightly, that Moretto was once a

conspirator and might rejoin the conspiracy after prison.

The jury could then have concluded that, in making the

telephone calls to Polito in June 1990, Moretto did rejoin

the conspiracy. It is true that the time gap between the

last proved Willis ring transaction in February 1989 and the

calls in June 1990 is substantial. But the jury was not

obliged to believe that a well organized drug ring, which

enjoyed a "northern territory" and remembered a former

associate at Christmas, had suddenly expired. When this same

former foot soldier is discovered in June 1990 threatening a

witness, who is believed likely to testify to the ring's

2The government's brief in fact points to evidence that
Moretto while in prison telephoned Polito's mother to
threaten Polito for failing to pay his drug-purchasing debts.
That evidence may not have been admissible because of its
hearsay character--apparently the initial source of the
evidence was Polito's mother, who did not testify. However,
this evidence is not challenged on this appeal, and the
remaining evidence against Moretto is adequate even if this
evidence, largely embodied in a single sentence of Polito's
testimony, is ignored.

-10-

activities, the jury might well have concluded that the

conspiracy was ongoing and the soldier had just reenlisted.

Grunewald v. United States, 353 U.S. 391 (1957),

heavily relied on by Moretto, does not forbid this inference.

It dealt with entirely different facts--specifically, a

conspiracy that had achieved its single objective well before

the acts of concealment that were claimed to extend it for

purposes of the statute of limitations.3 Perhaps more in

point is the statement in United States v. Mayes, 512 F.2d

637, 642 (6th Cir.), cert. denied, 422 U.S. 1008 (1975) that

"[w]here a conspiracy contemplates a continuity of purpose

and a continued performance of acts, it is presumed to exist

until there has been an affirmative showing that it has

terminated . . . ." In all events, the jury in this case was

certainly entitled to infer from all of the circumstances--

apparent size of the drug ring, its duration, Moretto's

threats, and the threats' references to others--that the ring

continued and Moretto rejoined it.

Separately, Moretto claims that the evidence did not

support the jury's guilty verdict against him on the charge

of witness intimidation under 18 U.S.C. 1512(b). That

statute in pertinent part forbids any act of "intimidation"

3Similarly, in United States v. Serrano, 870 F.2d 1 (1st

Cir. 1989), statements sought to be introduced under the co-
conspirator exception to the hearsay rule occurred after the
fraudulent scheme had "collapsed."

-11-

done with intent to induce anyone to "withhold testimony"

from a grand jury or other official proceeding. The three

telephone conversations in this case, recorded by Polito and

played to the jury, are replete with statements by Moretto

that the jury could reasonably have found to be intimidating

in both nature and intent. A brief sampling of Moretto's

statements, omitting some rejoinders by Polito, conveys their

flavor:

"I just have a message . . . . You have
one chance to hear this and then its
gonna be somtin' that you never want to
hear and it's like a hairline fracture
away from it. People knew what's going
on."

"Mark, we got friends all over the place,
right? DEA, state troopers, everything
. . . . [Y]ou don't seem to understand
that everybody knows that you went and
talked [to law enforcement agents] . . .
. I got to call these people back . . .
. [T]hey just want some assurance that
nobody's going to no Grand Jury . . . ."

The heart of Moretto's appeal on this count is that

during the first of the conversations on June 12, Polito

asked Moretto if Moretto was threatening him and Moretto

responded: "No, I'm not. I am not. I'm relaying indirect

messages. I'm not threatening anybody. I'm--I would never

hurt nobody. I'm not that kind of person." The jury could

reasonably view this statement, lodged among many veiled

threats, as a boilerplate disclaimer, coupled with the

intimation that others ("I got to call these people back")

-12-

would inflict the harm if Moretto's warning were ignored. If

anything, the statement enhances the sinister character of

the conversation.4

III.

Willis, Elwell and Moretto each appeals his sentence.

We consider their respective claims in that order.

Willis. Willis was sentenced as a career offender under

U.S.S.G. 4B1.1. That provision provides that a defendant

is placed in the highest criminal history category and that

specified minimum offense levels apply, if three conditions

are met: first, the defendant must be at least 18 years old

at the time of the instant offense; second, the offense must

be a felony that is either a crime of violence or a drug

offense; and third, the defendant must have "two prior felony

convictions" for such offenses. It is undisputed that Willis

meets the age condition, that the instant conviction is a

drug offense and that he had five prior convictions, one

state and four federal, for five bank robberies committed on

different dates during a brief period in 1968.

Willis argued unsuccessfully at sentencing that the

prior bank robberies should be treated as a single felony

4Moretto's brief adopts by cross-reference Moran's
argument that the trial judge gave a supplementary
instruction that invited the jury to ignore the conspiracy
charged in the indictment and convict of a different
conspiracy. That argument is considered and rejected in our
separate opinion in Moran.

-13-

because the definitions provision of U.S.S.G. 4B (

4B1.2(3)) provides in part that "`two prior felony

convictions' means . . . [that the convictions were for a

crime of violence or drug offense and that] at least two of

the . . . convictions are counted separately under the

provisions of 4A1.1(a), (b), or (c)." This latter

provision, designed to determine the number and length of

"prior sentence[s]" in order to compute a defendant's

criminal history category under U.S.S.G. 4A, in turn

provides in a related definition that "[p]rior sentences

imposed in related cases are to be treated as one sentence

for purposes of 4A1.1(a), (b) and (c)." U.S.S.G.

4A1.2(a)(2) (emphasis added). The commentary to that

section, id., app. note 3, pertinently provides:

[P]rior sentences are considered related
only if they resulted from offenses that
(1) occurred on the same occasion, (2)
were part of a common scheme or plan, or
(3) were consolidated for trial or
sentencing.

Based on this language Willis argued at sentencing that

his five bank robberies were part of a common plan to rob

banks and, in any event, that the sentences imposed--although

not formally in consolidated cases--were concurrent

sentences, part of the same bargain, and thus in

"constructively" consolidated cases. Willis further

requested that, if his proffer of these facts was not

accepted, he be afforded an evidentiary hearing and

-14-

opportunity for fellow bank robbers to testify to their

common plan and for a former attorney to show that the

sentences were concurrent and part of the same plea bargain.

The district court declined to hold an evidentiary hearing

and concluded that the bank robbery convictions were separate

crimes.

At first blush, it might seem unlikely that the

Sentencing Commission intended a defendant to escape career

offender status, in the teeth of two prior convictions for

different bank robberies at different times and places,

simply because those prior robberies were assertedly linked

by a further felony, namely, an overarching conspiracy to rob

banks that could literally be called a "common scheme or

plan." Of course, two crimes might be so closely related--

for example, an assault committed in the course of a bank

robbery--that it would disserve the plain purpose of a

"repeat offender" statute to treat convictions for each as

two prior convictions. But five separate bank robberies,

committed with the opportunity to pause and reflect between

them and memorialized by convictions, are surely what

Congress had in mind as identifying a career offender. 28

U.S.C. 994(h). One might therefore doubt, at least

initially, whether the Commission was aware that the contrary

result would follow from its commentary language whenever the

bank robberies were part of a common plan.

-15-

If we were satisfied that the outcome departed from

Commission intent, we might disregard the literal language of

the commentary and treat as a single conviction only those

convictions so closely related in time and function that

separate treatment would disserve the purpose of the career

offender provision. Yet a broader perspective suggests that

the Commission, in defining related convictions, did mean to

adopt binding "rules of thumb," such as this one, as well as

the even more mechanical rule that convictions for entirely

separate crimes should be treated as one if they happen to be

consolidated for trial or sentence. U.S.S.G. 4A1.2(a)(2).

In fact, the Commission in the same paragraph recognized that

these rules of thumb could understate criminal history, and

it said that the remedy in such cases was for the sentencing

judge to employ an upward departure. Id.5

To conclude that the Commission intended the apparent

result of its literal language does not resolve the matter

since we might still decide that a rule of thumb that

produces such a result is unfaithful to the guideline and to

the career offender statute that lies behind it. But

5In the commentary paragraph containing both the "single
scheme or plan" and the "consolidated for trial or
sentencing" provisions, the Commission continued: "The court
should be aware that there may be instances in which this
definition is overly broad and will result in [an inadequate]
criminal history score . . . . In such circumstances, an
upward departure may be warranted." U.S.S.G. 4A1.2, app.
note 3.

-16-

Congress in 28 U.S.C. 994(h) authorized the Commission to

develop guidelines to assure that career offenders receive

high sentences; and we are loath to hold that the mechanism

developed by the Commission (and submitted to Congress) falls

outside that authority, even if there is a Rube Goldberg

aspect to the use of overbroad rules of thumb tempered by the

power to depart. The Second Circuit has treated the "common

scheme or plan" language as binding, while eloquently urging

the Commission to reexamine its "related cases" commentary.

United States Butler, 970 F.2d 1017 (2d Cir.), cert. denied,

113 S. Ct. 480 (1992).

Once we decide that the "common scheme or plan"

definition is both intentional and valid, it follows that the

"common scheme or plan" language should be given its ordinary

meaning. This same language is used in Fed. R. Crim P. 8 (to

determine joinder) and there is no doubt that in that context

a conspiracy to rob banks would constitute a common scheme or

plan. Willis offered to call fellow bank robbers to confirm

that his robberies were part of the same conspiracy, and

there is nothing implausible about his proffer, however odd

it might seem to conduct this inquiry. Other circuits have

required such evidentiary hearings which, not surprisingly,

tend to produce findings that the multiple convictions were

not part of a common scheme or plan. E.g., United States v.

Chartier, 970 F.2d 1009 (2d Cir. 1992).

-17-

For the reasons indicated, we feel constrained to accept

the guideline commentary, to conclude that the proffer could

not be ignored, and thus to remand Willis' case for

resentencing.6 We do not, however, think that the district

court is required to hold an evidentiary hearing if the court

concludes that it would impose the same sentence even without

the "career offender" label. The guideline commentary itself

asserts that the rule of thumb here invoked by Willis is

overinclusive and invites judges to depart upward where the

rule of thumb operates to understate criminal history.

Accordingly, the requirements for departure are satisfied if

the judge supportably concludes that--even assuming the truth

of Willis' proffer--five prior bank robberies, united by a

conspiracy to rob banks, makes Willis deserving of a sentence

similar to that he would receive if he were classified as a

career offender. U.S.S.G. 5K2.0.

Whether or not the outcome proves to be the same for

Willis, it is important for future cases that the integrity

of the guideline regime be preserved. Under our reading of

the guideline commentary, the district court may not classify

6The government says that the district court here
"found" that there was no common scheme or plan and it says
correctly that there is no automatic requirement of an
evidentiary hearing for every contested issue. But in this
case, Willis' proffer is not implausible on its face and
there was apparently no other evidence about the bank
robberies. As we read the transcript, the district court's
"finding" actually derived from a narrowing interpretation of
the guideline language.

-18-

Willis as a career offender, assuming the truth of his

proffer proposing to show a common scheme or plan; but we

repeat (without prejudging the facts of this case) that the

district court does have authority to depart upward, subject

to appellate review. 18 U.S.C. 3742(e)(3). The net effect

is to increase the range of discretion of the district judge

in these situations, which may be just what the Commission

intended. As we have noted, an evidentiary hearing is not

automatically required in cases like this one--not because

the judge can "find" no common scheme or plan in the face of

a proffer like this one and without a hearing, but rather

because the judge may depart rather readily even if such a

scheme or plan is assumed.7

Although Willis' case is to be remanded, we consider his

other claims of error, both for the guidance of the district

court and to reduce the need for further appeals.

Specifically, Willis argues that he was wrongly denied an

evidentiary hearing on two issues important to his

sentencing, namely, the amount of cocaine for which he was

7We reject Willis' further argument that the bank
robbery convictions, even though not formally consolidated,
should be deemed "constructively" consolidated because of the
alleged plea bargain and concurrent sentences. The fact is
that the cases were not consolidated. Whatever anomalies
result from the accident of consolidation vel non, the

situation is not going to be improved by treating
unconsolidated cases as "constructively" consolidated,
thereby broadening beyond its language an already overbroad
rule of thumb. See United States v. Rivers, 929 F.2d 136

(4th Cir.), cert. denied, 112 S. Ct. 431 (1991).

-19-

responsible and his leadership status. We think the district

court properly resolved these matters.

At the sentencing, the judge determined that Willis was

responsible for 2.2 kilos, resulting in a base level of 28,

U.S.S.G. 2D1.1(a)(3), (c)(8), and was a "leader"

warranting an upward adjustment. U.S.S.G. 3B1.1. However,

instead of adopting the resulting offense level, the judge

ruled that Willis was a career offender, making him subject

(in light of the maximum sentence to which he was liable) to

a base level of 32. U.S.S.G. 4B1.1 The court reduced

this figure by 2 levels for acceptance of responsibility.

The court then sentenced Willis at the top of the range

provided by the sentencing table for a criminal with an

offense level of 30 and a criminal history category of VI

(which is automatic under U.S.S.G. 4B1.1 for a career

offender).

In finding Willis to be a leader and computing the

amount of cocaine, the judge relied upon information adduced

at the trial of Willis' co-defendants and on other government

tape recordings not introduced at the trial but made

available for the sentencing. On appeal Willis insists that

he was entitled to an evidentiary hearing on the amount of

cocaine. Neither the amount of cocaine nor the leadership

finding affected the guideline range adopted by the district

court since the career offender guideline superseded the

-20-

"otherwise applicable offense level." U.S.S.G. 4B1.1.

Nevertheless, because the leadership role of Willis and the

amounts of cocaine handled by his ring might well be

pertinent to the district court's sentencing decision on

remand, we address Willis' objections.

The law concerning the need for evidentiary hearings has

been left primarily to development through individual

decisions, which themselves reflect the tension between two

attitudes: the history of almost unreviewable trial judge

discretion in sentencing and the present specificity of the

guidelines. See U.S.S.G. 6A1.3. Here, however, there is

no need for any lengthy discourse on sentencing hearings. A

prima facie case existed, based on the presentence report and

the evidence adduced at the co-defendants' trial, to regard

Willis as playing a leading role in a ring dealing in

substantial quantities of cocaine. At no point did Willis

ever specify or proffer evidence that would be adduced in an

evidentiary hearing to negate the amounts or Willis' role as

leader. Under these circumstances, it is patent that no

hearing was required. United States v. Shattuck, 961 F.2d

1012, 1015 (1st Cir. 1992). Lastly, Willis argues that

because the prior convictions were used to trigger the career

offender guideline, the government had to file a notice

specifying the prior convictions before Willis' guilty plea

in this case. 21 U.S.C. 851 (prior notice is a condition

-21-

of "increased punishment"). Willis' argument that section

851 applies to guideline increases, as well as statutory

maximums, was rejected by this court in United States v.

Sanchez, 917 F.2d 607, 616 (1st Cir.), cert. denied, 111 S.

Ct. 1625 (1991). We decline the invitation to reexamine that

decision.

Elwell. Elwell was convicted of conspiracy, two

distribution counts, and wilfully filing a false tax return,

and he was sentenced to 78 months imprisonment. The sentence

was the minimum allowed under the guideline range in light of

the finding that he had distributed at least 500 grams.

U.S.S.G. 2D1.1(a)(3), (c)(3).

Elwell first contests the finding that he did distribute

at least 500 grams. He admits the distribution to Polito of

about 3 ounces (approximately 84 grams) for which he was

convicted; indeed, Elwell admitted at sentencing that he had

sold more to Polito without specifying a number. At trial

Polito testified that, apart from the 3 ounces, Elwell had

delivered "18, maybe 20" ounces of cocaine to Polito during

the summer of 1988. The judge accepted this evidence despite

Elwell's denial at the sentencing hearing that he had sold so

large a quantity. Even the low-end figure of 18 ounces is

504 grams, exceeding the guideline minimum of 500 grams.

The critical facts by which a guideline range is fixed

must be proved by a preponderance of the evidence, e.g.,

-22-

United States v. Blanco, 888 F.2d 907, 909 (1st Cir. 1989).

While inviting us to raise or at least stiffen this standard,

Elwell's main argument is that Polito's estimate was too

casual to support the drastic increase in sentence that

results for distributing 18 rather than 3 ounces. He

stresses the fact that Polito was himself a user during this

period and admitted to hazy recollections or mistakes in

other testimony. Combining these arguments, he argues on

appeal that the judge's determination was clearly erroneous,

the standard properly applied on review. United States v.

Aymelek, 926 F.2d 64, 69 (1st Cir. 1991).

We disagree. The district court, which heard Polito's

testimony at trial and Elwell's testimony at the sentencing

hearing, was entitled to choose between them. The time

period over which Elwell supplied Polito and the size of

Polito's purchases were also consistent with the 18-20 ounce

figure. Against this backdrop and in light of the standard

of review, we find no error. This conclusion also disposes

of Elwell's claim that the larger ounce figure was wrongly

used in determining the amount of unreported income in

sentencing under the tax count.

Elwell objects lastly to the special condition of

supervised release that requires him to submit to random drug

testing, as well as drug and alcohol treatment, as directed

by the Probation Service. Elwell objects that his use of

-23-

drugs (cocaine and previously amphetamines) lay 5 years or

more in the past, that nothing else supports this condition,

and that supervised release conditions should "involve[] no

greater deprivation of liberty than necessary . . . ." 18

U.S.C. 3583(d)(2). We believe that the drug testing and

treatment requirement--if deemed necessary by the Probation

Service--lay well within the district court's discretion,

given Elwell's past use and past dealing in drugs. As to

alcohol, the failure of Elwell to raise this objection at

sentencing or by post-trial motion makes it impossible to

assess the district court's reasons for adding in this

condition and, in our view, this failure waived the

objection.

Moretto. Moretto's sentence was based on the district

court's finding that he should be treated as a career

offender. His record showed two state court convictions for

assault and related conduct in October 1987 and February 1990

respectively and a drug conviction for possession with intent

to distribute in March 1988. In the district court, Moretto

argued that the assault convictions were misdemeanors under

state law, but the trial judge found them to qualify as

felonies for guideline purposes. See U.S.S.G. 4B1.2, app.

note 3 (prior felony conviction includes offense punishable

by more than one year imprisonment even if not designated as

a felony).

-24-

On appeal, Moretto asserts that the trial court relied

on the two state assault charges to find two prior

convictions. Moretto then argues that while the October 1987

conviction may be a "prior" felony conviction, the latter

assault conviction in February 1990 occurred after the start

in 1988 of the conspiracy for which he was convicted in this

case. In reply, the government says that this argument is

waived because not made below; that in any event the instant

conspiracy continued after the February 1990 conviction,

making it a prior conviction under the guidelines; and that

the first assault conviction and the drug possession

conviction both remain even if the second assault is

disregarded.

Waivers are occasionally forgiven and the government's

reliance on the March 1988 drug conviction could presumably

be assailed on the same ground that Moretto now offers to

exclude the February 1990 conviction from consideration,

namely, that it occurred after the instant conspiracy began.

But we think the ground is clearly wrong: continued

participation in a conspiracy after a felony conviction

renders that conviction a prior felony conviction. This is

apparent from both the letter and intent of the guidelines,

U.S.S.G. 4B1.2(3)("defendant committed the instant offense

subsequent to sustaining at least two felony convictions . .

-25-

. ."), and thus there was no error in sentencing Moretto as a

career offender.

The judgments are affirmed except as to Willis whose

case is remanded for resentencing in accordance with this

opinion.

-26-