NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 16-2701

———————

UNITED STATES OF AMERICA

v.

REGINALD BRADDY,
Appellant

———————

No. 16-2806

———————

UNITED STATES OF AMERICA

v.

FONTAINE HORTON,
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. Nos.: 3-14-cr-00104-001 and 3-14-cr-00104-002)
District Judges: Honorable Malachy E. Mannion and Honorable Edwin M. Kosik
_____

Submitted under Third Circuit L.A.R. 34.1(a)
on November 17, 2017
Before: AMBRO, KRAUSE, and RENDELL, Circuit Judges

(Opinion filed: December 6, 2017)

_____

O P I N I O N[*]

_____

**RENDELL**, Circuit Judge:

Reginald Braddy and his co-defendant Fontaine Horton were both found guilty of conspiracy to possess and distribute narcotics in violation of 21 U.S.C. §§ 846, and Horton was also found to be in violation of 21 U.S.C. § 841. Braddy and Horton appealed. The Defendants raise several issues: (1) both challenge the District Court's denial of their motion to suppress wiretap evidence; (2) Braddy argues that the District Court erred in denying his motion for a mistrial; (3) Braddy also argues that the District Court erred in denying his motion for judgment of acquittal; and (4) both Defendants challenge the sentences imposed by the District Court. We will affirm all of the District Court's orders.[1]

## I. FACTS AND PROCEDURAL HISTORY

Braddy and Horton were indicted for conspiracy to traffic methamphetamine, cocaine, and heroin. **A1120-23.** Each pleaded not guilty and proceeded to trial.

Prior to trial, the Defendants filed a joint motion to suppress evidence obtained through court-approved wiretaps. They argued that the Government's wiretap applications failed to show that traditional investigative methods "ha[d] been tried and

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] We possess jurisdiction over this appeal from a final district court order pursuant to 28 U.S.C. § 1291.

2

have failed or reasonably appear to be unlikely to succeed," as required by 18 U.S.C. § 2518(3)(c). **A1124-30.** They also argued that they were entitled to a *Franks* hearing to determine whether the wiretap warrants were based on false statements by law enforcement. **A1132-46.** The Distirct Court rejected both arguments and denied the motion to suppress. **A18.**

At trial, three confidential informants testified that they had purchased various types of drugs from Braddy and Horton and that the two Defendants worked together to ship, distribute, collect payment for, and "cut" the drugs for resale.[2] The Government also introduced evidence of Braddy and Horton's frequent phone and text conversations regarding their trafficking activities. **A183.**

At one point during the trial, the following exchange took place during defense counsel's cross-examination of Michael Sciarillo, a law enforcement officer involved in the investigation:

Q: And what is the code word for crystal meth?

A: Ice, ugly, rocket fuel, racing fuel, glass, slippers.

---

[2] Informant One testified that he had met Horton through Braddy's uncle. **A221.** He also testified that sometimes when he purchased drugs from Horton, Horton told him to send money to Braddy's California address instead of paying Horton directly. **A272.**

Informant Two testified that Braddy sent Horton packages of drugs. **A344-46.** He testified that Horton facilitated a phone conversation where Braddy told the informant how to "cut" large quantities of drugs for resale. **A337.** He also testified that Horton and Braddy "cut" drugs together, and that Horton allowed the informant to use his car to sell drugs. **A338-40.**

Informant Three testified that Braddy introduced him to Horton after the informant told Braddy he wanted to purchase drugs from him. **A447.** Braddy sent Horton to the informant's home to carry out the sale. **A447.** He testified that sometimes Braddy told him to pay Horton directly, and sometimes he told him to send payment to Braddy in California. **A448.**

Q: Would you agree with me of any of the documents you went through that other than the one document . . . there's no mention of any of those code words?

A: There's mention in text message and various mentions in the audio, which we will play.

Q: Would you identify the other one—other than that one?

A: What do you want me to identify?

Q: Other than that one, the one thing you went through --

A: Yes

Q: -- I want you [to] identify there are crystal meth code words other than the one space where it talks about ugly.

A: Actually I believe I am incorrect. That exhibit will be presented by another witness, not me. So for that exhibit, yes, you're correct.

A423-24. Following this exchange, defense counsel moved to strike Sciarillo's testimony and declare a mistrial, citing "testimony of what another witness is going to say." A424. The District Court denied the motion for mistrial. **A424.**

Following the Government's presentation of evidence, the Defendants moved for a judgment of acquittal, arguing that the Government had failed to prove a conspiracy. **A544–55**. The District Court denied the motion, and the jury returned a guilty verdict. **A546.**

Horton and Braddy were sentenced to 188-225 and 235-240 months in prison, respectively, based on the District Court's conclusion that the offense involved at least 18,265 kg. of drugs. **A22.** Horton objected, arguing that he should only be responsible for the quantity of drugs he personally possessed or sold. **A23.** The District Court rejected this argument. **A36.**

4

## II. DISCUSSION

## A. Wiretap Evidence

The Defendants argue that the District Court erred in admitting wiretap evidence because the Government's wiretap application did not meet the requirements of 18 U.S.C. § 2518(3)(c). They also argue that the District Court erred in refusing to grant them a *Franks* hearing to determine whether the wiretaps were obtained through false statements. We will not disturb these rulings.

### 1. Motion to Suppress Wiretap Evidence[3]

18 U.S.C. § 2518(3)(c) requires a wiretap applicant to show that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." The Defendants argue that the wiretap applications did not meet this requirement because, using traditional investigative techniques, the Government had already obtained sufficient evidence to charge them with the crime. Specifically, it already had identified several members of the conspiracy, determined the source of some of the drugs, and obtained financial information about Braddy.

However, the Defendants misconstrue § 2518(3)(c)'s requirement. As the District Court correctly noted, even where traditional investigative techniques may be sufficient to implicate some members of a conspiracy, wiretaps are permissible if necessary to uncover the full scope of the conspiracy. *See United States v. Bailey*, 840 F.3d 99, 114–

---

[3] This Court reviews the denial of a motion to suppress "for clear error as to the underlying facts, but exercise[s] plenary review as to its legality." *United States v. Jackson*, 849 F.3d 540, 544 (3d Cir. 2017).

15 (3d Cir. 2016) ("As we have previously explained, even where 'normal investigative techniques might have been sufficient to implicate' the conspiracy leader in drug trafficking, 'such approaches' are sometimes insufficient to determine 'the scope of the conspiracy or the nature of [the conspiracy leader's] on-going criminal activity.' Instead, '[i]n the proper circumstances, the instrumentalities of Title III may be employed to discover the full extent of crimes and conspiracies.'" (quoting *United States v. Vento*, 533 F.2d, 838, 850 (3d Cir. 1976)). When determining whether a wiretap is necessary to uncover the full scope of a conspiracy, a court "may properly take into account affirmations which are founded in part upon the experience of specifically trained agents." *United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997).

The District Court did not err in concluding that wiretaps were necessary to learn the full scope of the drug trafficking conspiracy. The law enforcement affidavits submitted in support of the wiretap applications described in detail the traditional investigative techniques used. They explained that these techniques had failed to reveal the full scope of the conspiracy, including all the participants, suppliers, customers, and storage locations involved. They also described the various traditional techniques not employed—including undercover officers, grand jury subpoenas, search warrants, interviews, and mail covers—and why those techniques would have been ineffective or even dangerous. The District Court thus properly concluded that wiretaps were necessary to uncover the full scope of the conspiracy and that the applications complied with § 2518(3)(c).

6

## 2. Failure to Grant a *Franks* Hearing[4]

In certain circumstances, a criminal defendant has the right to an evidentiary hearing to determine whether a search warrant was based on a false statement. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). According to the Defendants, two pairs of contradictory law enforcement statements entitled them to a *Franks* hearing.[5] First, according to a law enforcement report, in October 2013 Informant Two told law enforcement officers that he obtained drugs from Horton and that he knew Horton obtained drugs from Braddy. **Braddy Br. at 21.** But, according to the January 2014 wiretap application, "while [Informant Two] previously identified Horton as being his source for narcotics, [Informant Two] is a relatively low 'street-level' drug dealer and is not familiar with other members of Horton's organization or with Horton's source(s) of supply." Id. Second, according to the same affidavit, "investigators do not know the location where Fontaine Horton received his mail" and "have not yet identified any bank accounts and/or assets potentially owned or utilized by Horton's drug trafficking organization." Id.  However, other documents show that they were aware of at least one bank account and several addresses associated with Braddy by late 2013.

In order to obtain a *Franks* hearing, a defendant must make "a substantial preliminary showing" that (1) the warrant was based on a statement that was knowingly

---

[4] The standard of review applied to a district court's denial of a *Franks* hearing is an open question in the Third Circuit. *See United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012) ("We have not yet identified the standard of review for a district court's denial of a request for a *Franks* hearing"). We need not resolve this question here because the District Court's decision withstands even *de novo* review.

[5] For purposes of this decision only, we assume *Franks* applies to wiretap applications.

and intentionally false or made with reckless regard for the truth, and (2) the allegedly false statement was necessary to the finding of probable cause. *Franks*, 438 U.S. at 155-56. "[T]he defendant cannot rest on mere conclusory allegations." *United States v. Yusuf*, 461 F.3d 374, 383 n.8 (3d Cir. 2006).

We agree with the District Court's conclusion that the Defendants failed to make the required preliminary showing. Although some of the statements in the affidavits were inconsistent with statements found in other documents, the Defendants' bare allegations do not support a finding that any false statements were made knowingly and intentionally or with reckless disregard for the truth. Nor have they shown that any of the allegedly false statements were necessary to the court's probable cause determination. The Defendants were therefore not entitled to a *Franks* hearing.

**B. Braddy's Motion for Mistrial**

The District Court did not err in denying Braddy's motion for mistrial following Sciarillo's testimony.[6] Braddy argues that Sciarillo's incorrect statement that he would present an exhibit providing the code words for methamphetamine—which he himself then corrected—was purposefully made in order to negate cross-examination and bolster a future witness. Braddy relies exclusively and incorrectly on *United States v. Boyce*, 849 F.2d 833 (3d Cir. 1988). In *Boyce*, following cross-examination of a Government witness regarding her failure to produce several pieces of physical evidence, the prosecutor turned to the jury and declared that he would "be happy" to produce the evidence himself.

---

[6] A district court's denial of a motion for a mistrial in such a situation is subject to abuse of discretion and harmless error analysis. *See United States v. Vitillo*, 490 F.3d 314, 325 (3d Cir. 2007).

*Id.* at 837-38. The *Boyce* court rejected this "bald attempt to undercut the defense's cross-examination and vouch for the credibility of his own witness." *Id.* But here, the Government did not attempt to correct Sciarillo's testimony or bolster his credibility by directly addressing the jury. In fact, the Government did not speak at all following this exhange. *Boyce* is thus inapposite, and the District Court properly denied Braddy's motion for a mistrial.

### C. Braddy's Motion for Judgment of Acquittal

The District Court properly denied Braddy's motion for a judgment of acquittal. A reviewing court must uphold a conviction "if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999). To prove a drug-trafficking conspiracy under 21 U.S.C. § 846, "the government must establish: (1) a shared unity of purpose between the alleged conspirators, (2) an intent to achieve a common goal, and (3) an agreement to work together to that goal." *United States v. Bailey*, 840 F.3d 99, 108 (3d Cir. 2016). A simple buyer-seller relationship is not sufficient. *Id.*

Braddy argues that he merely had a buyer-seller relationship with his alleged co-conspirators. **Braddy Br. at 16.** However, there was sufficient evidence to allow a reasonable jury to conclude that Braddy at least one other person—Horton—"worked together" with a "shared unity of purpose" to achieve a "common goal" of distributing drugs. Trial testimony established that for at least one year, Braddy and Horton worked together to ship, distribute, and collect payment for various types of drugs. **A177, A183, A394, A396, A399-401.** Together they "cut" large quantities of drugs for resale. **A338-**

9

**39**. They communicated regularly about their criminal activities. **A183.** Horton himself testified that he obtained $38,500 from one of the confidential informants and sent Braddy the money via mail. **A615–17**. Given this and the other evidence introduced at trial, the District Court properly denied Braddy's motion for a judgment of acquittal.

### D. Defendants' Sentencing Challenges

Finally, Horton and Braddy challenge the sentences imposed by the District Court. Horton argues that the District Court should have calculated his sentence based the amount of drugs he personally trafficked, not the amount of drugs involved in the conspiracy as a whole. **Horton Br. 20-22.** He also suggests that the District Court erroneously relied on the informants' trial testimony to determine the quantity of drugs attributable to him. **Horton Br. 22.** Braddy argues that his sentence is substantively unreasonable because it is greater than the sentences imposed on other members of the conspiracy. **Braddy Br. 25-26**. We affirm both sentences.

### 1. Horton's Sentence[7]

The District Court did not err in holding Horton responsible for the entire quantity of drugs trafficked as part of the conspiracy. A "defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *United States v.*

---

[7] "We review for clear error the District Court's findings of facts regarding the relevant quantities of drugs attributable to the defendant." *United States v. Perez*, 280 F.3d 319, 352 (3d Cir. 2002).

*Perez*, 280 F. 3d 318, 253 (3d Cir. 2002) (quoting U.S.S.G. § 1B1.3 cmt. n.2).[8] Here, there was abundant evidence that Horton was involved in an ongoing joint undertaking to distribute large quantities of drugs with Braddy, and that the quantity of drugs attributed to him was reasonably foreseeable and within the scope of that undertaking. Braddy obtained large quantities of drugs and sent them to Horton in Pennsylvania for distribution. **A344-46**. Horton and Braddy worked together to distribute the drugs, obtain payment, and funnel the money back to California. **A344-46, A337-39, A447, A448, A458-74.** Together they "cut" large quantities of drugs for resale and instructed others how to do so as well. **A337-40.** Given this and other evidence introduced at trial, the District Court did not clearly err in concluding that the entire quantity of narcotics distributed as part of the conspiracy was reasonably foreseeable and within the scope of the jointly undertaken criminal activity.

We also reject Horton's argument that the District Court improperly relied on "unreliable witnesses" to determine the quantity of drugs attributable to Horton. Horton Br. 23. Evidence used as a basis for sentencing under the guidelines must "have sufficient indicia of reliability to support its probable accuracy." *United States v. Freeman*, 763 F.3d 322, 337 (3d Cir. 2014) (internal quotation omitted). "Indicia of reliability may come from, *inter alia*, the provision of facts and details, corroboration by or consistency with other evidence or the opportunity for cross-examination." *Id.* To the extent that a

---

[8] *Perez* cites the Sentencing Guidelines as amended in 2001. As of 2015, a substantively identical, but slightly modified, version can be found at U.S.S.G. § 1B1.3 cmt. n.3.

11

district court's findings are based on credibility determinations, we give "even greater deference to [its] findings." *United States v. Beckett*, 208 F.3d 140, 148 (3d Cir. 2000).

The District Court did not err in relying on the informants' testimony. Their testimony had several indicia of reliability. They were consistent with one another in terms of the price charged for particular types and amounts of drugs, the method of distribution and payment, and the relationship between Braddy and Horton. **A29–33**. Phone records and law enforcement testimony also corroborated the informants' testimony. **A177, A183, A394, A396, A399-401.** The District Court also made a general finding of credibility based on its observations from trial. **A29.** Given these indicia of reliability, and the deference afforded the District Court's credibility determinations, it did not err in relying on the informants' testimony.

## B. Braddy's Sentence[9]

Braddy's 235-month sentence was not substantively unreasonable. Where, as here, a defendant does not allege any procedural error in calculating his sentence, a sentence is presumed reasonable "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the [D]istrict [C]ourt provided." *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009). Based on the quantity of drugs attributable to him, Braddy's base offense level was 34. **A22**. This was increased by two levels for his leadership role in the conspiracy, and another two levels for obstruction of justice. **A22**. This adjusted base offense level of 38, combined with his

---

[9] When a defendant challenges the substantive reasonableness of a sentence, we review the sentence for abuse of discretion. *Freeman*, 763 F.3d at 335.

criminal history resulted in a Sentencing Guideline range of 235-293 months. **A22.** This was reduced to 235-240 months because of the statutory cap of twenty years. **A34**. This sentence complied with the Sentencing Guidelines and relevant statutory law, and we cannot say that no reasonable court would have imposed the same sentence.

Braddy suggests that his sentence is unreasonable because he received a longer sentence than his co-conspirators. However, "a criminal defendant has no constitutional right to be given a sentence equal in duration to that of his or her co-defendants." *United States v. Hart*, 273 F.3d 363, 379 (3d Cir. 2001) (internal quotation omitted). Braddy points out that his co-conspirator Borushak was sentenced to 18 months, and Horton was sentenced to 188 months. **Braddy Br. 25-26.** However, the quantity of narcotics attributable to Borushak was much less than that attributable to Braddy. And Horton was not subjected to a two-level increase in his base offense level because, unlike Braddy, he was not an "organizer and leader" of the conspiracy. A22. Given the evidence at trial to this effect, we cannot say that this two-level increase was an abuse of discretion. We therefore affirm the District Court's sentencing decision.

### III. CONCLUSION

Accordingly, we will affirm the Orders of the District Court.