NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2063
_____

UNITED STATES OF AMERICA

v.

EUGENE SMITH,
                    Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 2-18-cr-00306-001)
District Judge: Honorable R. Barclay Surrick
_____

Argued: July 15, 2021
_____

Before: McKEE, GREENAWAY, JR., and RESTREPO, *Circuit Judges*

(Opinion Filed: September 10, 2021)

Richard Coughlin
Karina D. Fuentes *[ARGUED]*
Office of Federal Public Defender
1002 Broad Street
Newark, NJ 07102

       *Counsel for Appellant*

Jennifer Arbittier Williams
Robert A. Zauzmer
Joan E. Burnes
Anita D. Eve
Bernadette A. McKeon *[ARGUED]*

Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

> *Counsel for Appellee*

_____

OPINION[*]
_____

GREENAWAY, JR., *Circuit Judge*.

Appellant Eugene Smith appeals his sentence and challenges: (1) the application of a two-level role enhancement, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3B1.1(c); (2) the application of a two-level enhancement for use of sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(10)(C); (3) the calculation of the loss amount used to calculate the guidelines range; and (4) the reasonableness of the final sentence. The District Court did not clearly err in applying the sophisticated means enhancement or in calculating the loss amount. However, because the District Court did not provide sufficient explanation and factual findings to enable our review of the application of the role enhancement, we will vacate the judgment of conviction and remand for resentencing.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

## I. BACKGROUND

From at least December 2016 through January 2018, Smith organized the production, sale, and distribution of counterfeit tickets to popular events, including National Collegiate Athletic Association football and basketball games, National Football League games, and concerts. The counterfeit tickets displayed the trademarks of several organizations and agencies that are registered with the United States Patent and Trademark Office. As part of this scheme, Smith purchased a genuine ticket to an event and requested that another individual, the printer, produce counterfeit versions of the tickets that bore the features of the genuine ticket, including specific seat and section numbers. Smith and three other individuals would then travel to events nationwide to sell the counterfeit tickets. These events included: the 2017 College National Championship game in Tampa, Florida; the 2017 Super Bowl in Houston, Texas; the 2017 NBA All-Star Game in New Orleans, Louisiana; the 2017 Army–Navy Game in Philadelphia, Pennsylvania; and the 2018 Super Bowl in Minneapolis, Minnesota, among others.

After Smith's scheme was uncovered, a grand jury returned an indictment, charging Smith with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; one count of wire fraud, and aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; one count of conspiracy to traffic in counterfeit goods, in violation of 18 U.S.C. § 2320; and one count of trafficking in counterfeit goods, and aiding and abetting the trafficking, in violation of 18 U.S.C. §§ 2320(a)(1) and 2. Smith entered a plea of guilty to all four counts.

The Probation Office provided the District Court with a Presentence Investigation Report ("PSR"). The Probation Office set the total offense level at nineteen, including (1) a two-level enhancement for Smith's role and (2) a ten-level enhancement based on the infringement amount of $173,250. The Probation Office did not include an enhancement for the use of sophisticated means. Based on Smith's criminal history and this offense level calculation, the Probation Office determined that the appropriate guidelines range was forty-six to fifty-seven months. Both the Government and Smith filed objections to the PSR.

The District Court conducted a sentencing hearing. After hearing from the parties, the District Court (1) applied the role enhancement, (2) applied the sophisticated means enhancement because the offense occurred over several years, involved various individuals, targeted events across the country, and employed a ticket selling process that was "somewhat complicated, somewhat complex," and (3) found that the loss was in excess of $150,000. App 190. Consequently, the District Court sentenced Smith to fifty-one months in prison, followed by three years of supervised release. The District Court also ordered restitution in the amount of $77,850 and a special assessment of $400.

This timely appealed followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We exercise plenary review over challenges to a district court's interpretation and application of the Federal

4

Sentencing Guidelines. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). We review any associated factual determinations for clear error. *United States v. Bierley*, 922 F.2d 1061, 1064 (3d Cir. 2009). In reviewing sentencing guidelines determinations for clear error, this Court reverses "only if [it is] left with a definite and firm conviction that a mistake has been committed." *United States v. Lessner*, 498 F.3d 185, 199 (3d Cir. 2007). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Beckett*, 208 F.3d 140, 148 (3d Cir. 2000) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)).

## III. DISCUSSION

### A. ROLE ENHANCMENT

Smith first argues that the District Court erred when it applied a two-level role enhancement pursuant to U.S.S.G. § 3B1.1. Section 3B1.1(c) allows for a two-level enhancement if the defendant was a "an organizer, leader, manager, or supervisor in any criminal activity." To qualify for the enhancement, "the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." § 3B1.1, cmt. 2. A "participant" is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant." § 3B1.1, cmt. 1.

Smith objected to the inclusion of the role enhancement in the PSR. The District Court stated: "Mr. Smith was in fact the leader of this situation, the organizer/leader of the situation . . . ." App. 191. Absent from the District Court's statement is any factual finding.

Smith contends that the District Court failed to sufficiently explain its decision to apply the enhancement. We agree.

A district court must "adequately explain the chosen sentence to allow for meaningful appellate review." *Gall v. United States*, 552 U.S. 38, 50 (2007). Our review of the District Court's application of the role enhancement is deferential, *see United States v. Fountain*, 792 F.3d 310, 321 (3d Cir. 2015) (reviewing the application of the role enhancement for clear error), but we cannot defer to the District Court's brief conclusion, which is devoid of the requisite factual findings. For instance, the District Court never made a factual finding as to who was the "participant" required for the § 3B1.1 enhancement to apply.[1] *See* § 3B1.1, cmt. 2. While the Government may be correct that there is enough information in the record to support a proper conclusion that the enhancement applies, our precedent advises that this Court should not speculate

---

[1] The printer and the other individuals who sold the counterfeit tickets are possible participants, but this Court has no way of knowing who, if anyone, the District Court determined was the participant who was organized, led, managed or supervised by Smith. The Probation Office noted that the printer and the three individual sellers were all participants, but the Government argues that only the printer was a participant for the purposes of the § 3B1.1(c) enhancement. The Government asks us to guess that the District Court based the enhancement on Smith's relationship to the printer, and not to the others as discussed in the PSR.

6

regarding what facts the District Court relied upon. *See United States v. Tai*, 750 F.3d 309, 319 (3d Cir. 2014) ("Under our precedent, the culpable participation of the person being supervised is central to the applicability of an upward adjustment for role. The question here then is whether the absence of such a finding of criminal culpability of a participant constitutes plain error. We conclude that it does.").[2]

We cannot discern whether the District Court committed error because it provided an insufficient explanation on the record. Accordingly, we will vacate and remand to the District Court for resentencing.

## B. SOPHISTICATED MEANS ENHANCEMENT

Next, Smith contends that the District Court erred in applying an enhancement for use of sophisticated means pursuant to U.S.S.G. § 2B1.1(b)(10)(C). The Sentencing Guidelines prescribe a two-point enhancement if an offense "involve[s] sophisticated means *and* the defendant intentionally engaged in or caused the conduct constituting

---

[2] Our sister courts have come to the same conclusion. *See United States v. Burnley*, 988 F.3d 184, 187-88 (4th Cir. 2021) (determining that "the district court's explanation [for applying the § 3B1.1 enhancement] is insufficient to facilitate meaningful appellate review, so we remand for further fact-finding and resentencing"); *United States v. Ware*, 577 F.3d 442, 451–52 (2d Cir. 2009) (noting that "the sentencing court must make specific findings as to why a particular subsection of § 3B1.1 adjustment applies," that these findings "must be sufficiently specific to permit meaningful appellate review," and that "[i]t is not enough for the court merely to repeat or paraphrase the language of the guideline and say conclusorily that the defendant meets those criteria"); *United States v. Tai*, 994 F.2d 1204, 1212 (7th Cir. 1993) (rejecting the government's argument that the record included sufficient support for the enhancement because "it is not [the appellate] court's role to make the factual findings necessary to support a sentencing calculation; that is a task for the district court").

sophisticated means." § 2B1.1(b)(10)(C) (emphasis added). The commentary defines

"sophisticated means" as conduct that is "especially complex or especially intricate." §

2B1.1 cmt. 9(B). The commentary includes specific examples of what would constitute

sophisticated means, such as hiding assets or transactions or using fictitious entities,

corporate shells, or offshore financial accounts. *Id.* Yet the commentary does not *limit*

the ways a defendant could use sophisticated means to facilitate his crime. *See id.* This

Court has said that factors to consider when making this determination include "the

duration of a scheme, the number of participants, the use of multiple accounts, and efforts

to avoid detection," and that the "enhancement is appropriate where a defendant's

conduct 'shows a greater level of planning or concealment than a typical fraud of its

kind.'" *Fountain*, 792 F.3d 310 at 319 (quoting *United States v. Fumo*, 655 F.3d 288,

315 (3d Cir. 2011)).

At the sentencing hearing, after both the Government and Smith presented their

views on the applicability of this enhancement, the District Court stated:

> After hearing all of the evidence and after hearing counsel's respective
> positions with regard to it, I'm satisfied that the sophisticated means
> enhancement is appropriate in this situation. The crime here occurred over
> an extended period of time, a couple years. There were a number participants
> in it . . . . The scope of the endeavor was nationwide, actually. . . .
>
> And I'm satisfied that this is not just a simple criminal endeavor. It was
> somewhat complicated, somewhat complex: getting a ticket, getting [the
> printer] to do the right thing, distributing those tickets in different areas. So
> I'm satisfied under all the circumstances that the sophisticated means
> enhancement is appropriate.

App. 190.

The District Court's determination here was not clearly erroneous. The District Court commented on the duration of the scheme, its nationwide scope, the number of people involved, the work that went into creating counterfeit tickets, and it concluded that Smith *caused* the printer to create the "right thing." *Id.* Given these findings, we do not find a reason to upset the District Court's application of the sophisticated means enhancement.

## C. LOSS CALCULATION

Finally, Smith contends that the District Court and Probation Office wrongly calculated the loss attributable to him for the purposes of computing his offense level. The Probation Office advised that the loss amount should be calculated to reflect the aggregate face value of the counterfeit tickets in accordance with U.S.S.G. § 2B5.3, and that this produced a $173,250 loss amount.[3] The Government also calculated the loss amount at $173,250, but it did so pursuant to U.S.S.G. § 2B1.1.[4] The District Court adopted this calculation.

---

[3] Section 2B5.3 of the Guidelines, which governs offenses involving counterfeits, defines an "infringing item" as one "that violates the copyright or trademark laws." U.S.S.G. § 2B5.1 cmt. 1. Section 2B5.3(b)(1)(B) counsels that if the infringement amount exceeds $6,500, the offense level should be increased in accordance with the table in § 2B1.1.

[4] Section 2B1.1 of the Guidelines enhances fraud sentences based on the amount of "loss." § 2B1.1(b)(1). The commentary defines "loss" as "the greater of actual loss or intended loss." § 2B1.1 cmt. 3(A). "Actual Loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." § 2B1.1 cmt. 3(A)(i). "Intended Loss" is defined as "(I) . . . the pecuniary harm that the defendant purposely sought to inflict; and (II) includes intended pecuniary harm that would have been

Pursuant to § 2B5.3, "[t]he infringement amount is the retail value of the infringed item, multiplied by the number of infringing items" where "the infringing item (I) is, or appears to a reasonably informed purchaser to be, identical or substantially equivalent to the infringed item; or (II) is a digital or electronic reproduction of the infringed item." § 2B5.1 n.2(A)(i). Here, the District Court did not err in determining the loss amount attributable to Smith was $173,250.

Pursuant to § 2B5.3, the face value, or retail value, of the counterfeit tickets was the "infringement amount," and therefore the appropriate loss amount. The infringing items were the counterfeit event tickets, printed at Smith's direction, that had a price on their face.

Similarly, the District Court did not err if § 2B1.1 had solely applied.[5] Section 2B1.1 directs courts to utilize "the greater of actual loss or intended loss." The "actual loss" (the amount Smith received, $77,850) is less than the "intended loss" (defined as "the pecuniary harm that the defendant purposely sought to inflict," § 2B1.1 cmt. 3(A)(ii), which was determined to be the $173,250 face value of the tickets).

---

impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)." § 2B1.1 cmt. 3(A)(ii).

[5] To the extent there is ambiguity in the record regarding the section employed by the District Court, it does not hamper our review because in this case loss under either section is based on the same predicate facts (the tickets' face value), as to which the District Court made express findings.

Therefore, the District Court did not clearly err in determining that the loss attributable to Smith was $173,250.[6]

## IV. CONCLUSION[7]

For the foregoing reasons, we will vacate the District Court's judgment of sentence and remand for resentencing. The District Court need not reconsider the two-level sentence increase for use of sophisticated means or revisit the loss calculation.

---

[6] Relying on Judge Bibas's concurrence in *United States v. Nasir*, 982 F.3d 144 (3d Cir. 2020), Smith argues that "this situation calls for the rule of lenity and the least harsh interpretation." Appellant's Br. 34 (quotation marks and citations omitted). It is true that the commentary in the Guidelines relied upon here more than doubled the loss amount attributed to Smith—the actual loss was $77,850 (the amount Smith received for the tickets), which would add *eight* levels, whereas the retail value used by the District Court was $173,250, which added *ten* levels. *See* §2B1.1. However, this argument is unavailing because, even if the concurring opinion was binding, the commentary here specifically states that the *greater* of actual or intentional loss should be applied, acknowledging that in some cases the amount of loss will be higher than the amount intended. *See* § 2B1.1 cmt. 3(A).

[7] Smith also argues the final sentence imposed by the District Court was substantively unreasonable. Given that we are vacating and remanding Smith's sentence on other grounds, we need not reach this argument at this posture. *See e.g., United States v. Merced*, 603 F.3d 203, 214 (3d Cir. 2010) ("If the district court commits procedural error, our preferred course is to remand the case for resentencing, without going any further."); *United States v. Douglas*, 885 F.3d 145, 154 n.6 (3d Cir. 2018) ("Because we will remand for resentencing due to the erroneous application of the enhancement . . ., we need not address the substantive reasonableness of the sentence.").